**J.G. PETA, INC. (doing business as Coverall Manufacturing), Plaintiff–Cross Appellant,**

v.

**CLUB PROTECTOR, INC., and William T. Held, Defendants–Appellants.**

Nos. 02–1127, 02–1128.

United States Court of Appeals, Federal Circuit.

May 20, 2003.

Before MAYER, Chief Judge, CLEVENGER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Club Protector, Inc., and William T. Held (collectively "Club Protector") appeal

from the order of the United States District Court for the Northern District of New York granting the motion of J.G. Peta, Inc., ("Peta") for summary judgment of noninfringement of U.S. Patent No. 4,830,037 ("the '037 patent"). We *affirm*.

## I

The '037 patent relates to a canopy that attaches to the back of a golf cart and covers the compartment that holds golf club bags. The movable canopy can be lowered to protect golf clubs from inclement weather or raised to remove golf clubs from the cart. The canopy attachment includes "frame means adapted to be attached to the golf cart and canopy means movably secured to the frame means." '037 patent, col. 1, II. 45–47. Defendant William T. Held owns the '037 patent and has granted an exclusive license to Club Protector, Inc.

Club Protector sent Peta a cease and desist letter asserting that Peta's golf cart canopy infringed the claims of the '037 patent. Peta responded by filing a declaratory judgment action asserting that it did not infringe the '037 patent and that the patent was invalid. Club Protector then filed a counterclaim of infringement.

After Peta moved for summary judgment of noninfringement, Club Protector sought a continuance pursuant to Federal Rule of Civil Procedure 56(f). The court granted the continuance, extending discovery for 90 days.

At the conclusion of the extended discovery period, Peta renewed its motion for summary judgment. Club Protector opposed the motion for summary judgment and challenged various procedural rulings by a magistrate judge, including the denial of Club Protector's request to amend its pleadings to add the defenses of equitable estoppel and unclean hands and to take a deposition relating to those defenses.

The district court granted Peta's motion for summary judgment of noninfringement. The court concluded that Peta's accused device lacked a "mounting means," a limitation found in the two asserted claims, claim 1 and claim 11, and that the accused device did not infringe the '037 patent, either literally or under the doctrine of equivalents. The court denied Peta's request for attorney fees under 35 U.S.C. § 285 and dismissed Peta's counterclaim for infringement. In a separate order, the district court upheld all of the magistrate judge's procedural rulings.

Club Protector appeals the grant of summary judgment of noninfringement. Peta cross-appeals the denial of attorney fees and costs.

## II

As a preliminary matter, Peta contends that we do not have jurisdiction over this appeal. Peta argues that Club Protector's notice of appeal was "untimely and premature" because Club Protector filed its notice of appeal two days before the entry of judgment by the district court clerk. We have already resolved this issue in an order filed on July 19, 2002, in which we held that the appeal was timely because Federal Rule of Appellate Procedure 4(a)(2) provides that a "notice of appeal filed after the court announces a decision or order–but before the entry of the judgment or order–is treated as filed on the date of and after the entry." Peta requests that we reconsider that order, but Peta's request itself is untimely, having not been filed within 14 days of the order as required by Federal Circuit Rule 27(*l*). In its brief to this court, Club Protector in turn states that Peta filed an untimely cross-appeal, but the cross-appeal was ruled timely and Club Protector's motion to dismiss the cross-appeal was denied by this court in an

order filed on April 17, 2002. Accordingly, neither appeal is dismissed.

## III

■ Claim 1 of the '037 patent provides:

In combination with a golf cart of the type having a forward seating compartment, a rear golf bag compartment, and a top assembly including a top disposed over the seating compartment, the top assembly additionally including front and rear laterally spaced apart frame members which support the top, the rear frame members being disposed between the forward seating compartment and rear golf bag compartment, the improvement which comprises a protective canopy assembly which includes a protective canopy attachment and mounting means secured to an intermediate portion of the rear laterally spaced apart frame members, the canopy attachment being at least partially supported by the mounting means and being moveable between the lowered first position where it may protectively cover golf bags and clubs positioned within the rear golf bag compartment and a raised second position where the golf bags may be unloaded from the rear golf bag compartment, the canopy attachment including a frame structure attached to the mounting means for movement relative thereto, and a cover assembly supported by the frame structure and secured to an upper rear portion of the top assembly.

Claim 11 provides:

A protective canopy attachment for attachment to a golf cart having a front, a rear, a seating compartment intermediate of the front and rear of the cart and a top assembly including a top supported generally above the seating compartment and front and rear laterally spaced frame members which support the top, said cart further including a rear compartment into which golf clubs and bags are positioned during use of the cart, and mounting means adapted to be attached to the rear frame members adjacent the rear compartment thereof and in a stationary relationship therewith said canopy assembly comprising:

a pair of U-shaped brackets pivotally interconnected to the mounting means for pivotal movement between an operative condition at which said brackets are positioned generally above the rear compartment of the cart and a non-operative, out-of-the-way condition, attachment means secured to an upper rear portion of the top assembly, and

a cover section secured to said brackets and said attachment means for movement therewith as the brackets are moved between said operative and non-operative conditions so that said cover section can be selectively moved between one condition at which said cover section protectably covers the golf bags and clubs positioned within the rear compartment and another condition at which said cover section does not inhibit the removal of clubs from the golf bags.

The district court held that the "mounting means" limitation in both claims is in means-plus-function form in accordance with 35 U.S.C. § 112, paragraph 6, and that the functions of the mounting means are to "partially support the canopy attachment and to provide movement relative to the attached frame structure." We agree, particularly in light of Club Protector's failure to propose any different function for the "mounting means" limitation.

The district court identified the structure that performs the recited functions as the structure referred to in the specification as the "frame means [70]," which includes "two bar sections 72 and 74 each

having a first through-opening 76 and a second through-opening 78 defined therein." '037 patent, col. 2, II. 61–64.[1] The specification explains that the "canopy means, generally indicated 80, [is] secured to the frame means 70, and movable relative thereto between operative and inoperative conditions" and that the canopy means includes a "frame structure 82" that consists of "a pair of generally U-shaped metal brackets 84 and 86 which are pivotally attached to one another and to the frame means 70." '037 patent, col. 3, II. 4–7, 10–12. The specification reveals that the bar sections are attached to member 102 having a clevis portion 104, through which a bolt passes permitting pivotal motion between the brackets and the bar sections. '037 patent, col. 3, II. 23–60. We agree with the district court that the specification makes clear that the frame means, including the bar sections, forms the structure that performs the recited functions of the claimed "mounting means." In addition, however, we conclude that the structural elements of the member 102 and the clevis portion are also components of the claimed mounting means because those elements allow for movement relative to the frame structure. With that minor alteration, we uphold the district court's construction of the "mounting means" limitation.[2]

Club Protector argues that the "mounting means" found in the accused device consists of a pair of plastic ties or clips. The Peta device includes (1) an awning track that connects a canopy assembly to the roof of a golf cart and (2) a canopy assembly consisting of a fabric cover supported by a framework formed from metal tubing with a stabilizer bar extending horizontally across the width of the cart and along the bottom of the assembly. The Peta canopy is sold with plastic ties or clips that can secure the stabilizer bar to the frame of the golf cart.

The district court concluded that the ties and clips function only to prevent vibration and do not perform the recited functions of the claimed "mounting means." The court stated:

> Even assuming that the clips and ties used on Peta's Canopy partially support its canopy attachment, those clips and ties clearly do not provide any movement relative to the attached frame structure. Put another way, the frame structure is simply not pivotally connected to either the ties or clips and, thus, does not move relative to the ties or clips.

While Club Protector argues that the plastic clips and ties support some of the weight of the canopy in the accused device, it does not challenge the district court's conclusion that the clips and ties do not

1. The prosecution history makes clear that when amending the claims, the patentee substituted "mounting means" for "frame means."

2. Club Protector contends that the district court erred in denying its request to schedule a *Markman* hearing "to have the benefit of expert testimony." This court has never held that district courts must conduct evidentiary hearings as part of the claim construction process. To the contrary, district courts are not required to follow any particular procedure in conducting claim construction; while "some courts have found it useful to hold hearings .... [s]uch a procedure is not always necessary." *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358, 60 USPQ2d 1493, 1498 (Fed.Cir.2001). In this case, the district court properly concluded that a hearing was not necessary in light of the simple technology and relatively straightforward claim language at issue. Extrinsic evidence was unnecessary, and the district court did not err in declining to conduct a hearing to consider it. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1578 (Fed.Cir.1996).

provide movement relative to the attached frame structure–a required function of the mounting means. Moreover, there is no evidence that the ties and clips provide movement relative to the frame structure. Accordingly, we agree with the district court that a reasonable jury could not conclude that Peta's accused device infringes claims 1 and 11 of the '037 patent. Because the relevant structure in the accused device fails to perform at least one of the claimed functions, the accused device cannot literally infringe.

Club Protector relies heavily on its expert's opinions to support its argument that there was a question of fact with respect to infringement. The district court considered the expert's contention that Peta's ties and clips are "mounting means," but rejected it, stating that the expert's opinion "is entirely conclusory and does not compel a contrary conclusion here." We agree. Club Protector's expert does not explain how the ties or clips perform all of the recited functions and thus his expert opinion is insufficient to create a genuine issue of material fact. *See Arthur A. Collins, Inc. v. N. Telecom Ltd.,* 216 F.3d 1042, 1047–48, 55 USPQ2d 1143, 1147 (Fed.Cir.2000).

With respect to the doctrine of equivalents, the district court concluded that prosecution history estoppel barred Club Protector from asserting equivalents to "mounting means" and accordingly granted summary judgment of noninfringement on that issue as well. After examining the prosecution history of the '037 patent, the court concluded that the "mounting means" limitation was narrowed by amendment to overcome a rejection based on prior art. Citing this court's en banc decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 234 F.3d 558, 56 USPQ2d 1865 (Fed.Cir.2000), the court applied a complete bar to equivalents. After

the district court issued its decision in this case, the Supreme Court vacated this court's decision and established a new framework for analyzing prosecution history estoppel. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). As Peta correctly states, the new framework establishes a rebuttable presumption that Club Protector is estopped from asserting the doctrine of equivalents. Peta further states, correctly, that Club Protector makes no attempt to rebut the presumption of estoppel and does not request a remand for purposes of making any such showing. The presumption of estoppel thus stands unrebutted, and accordingly we uphold the summary judgment of noninfringement under the doctrine of equivalents.

## IV

█ Club Protector also objects to several matters in the magistrate judge's procedural order dated April 11, 2001. First, Club Protector contends that it was a "fundamental denial of due process" for the magistrate judge to consider oral, rather than written, motions. There is no constitutional right to present argument in written rather than oral form, however, and nothing about the magistrate judge's procedure violated Club Protector's due process rights. Nor did the magistrate judge's procedure violate either the local rules of the district court or the Federal Rules of Civil Procedure.

█ Second, Club Protector argues that the magistrate judge erred in denying its belated request to amend the pleadings to add the defenses of equitable estoppel and unclean hands. A trial court's decision on a motion to amend a pleading is reviewed for abuse of discretion. *See Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir. 2003). The Second Circuit, whose law gov-

erns this issue, recognizes that a court may permit late amendment to a pleading upon a showing of good cause, which requires a showing of diligence by the moving party. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.2000).

Club Protector contends that Peta improperly withheld new information related to Peta's application for a patent of its own until March 9, 2001, a week before the close of discovery. Club Protector also states that Peta provided Club Protector with a copy of the motion for summary judgment at the completion of the April 4 hearing that resulted in the April 11 order. It was in that motion that Peta cited the Peta patent as evidence of noninfringement under the doctrine of equivalents. Club Protector argues that Peta engaged in inequitable conduct before the Patent and Trademark Office in obtaining its patent and that it was therefore improper for Peta to rely on that patent as evidence of noninfringement of the '037 patent. Peta's assertedly improper conduct forms the basis for Club Protector's proposed defenses of unclean hands and equitable estoppel.

The magistrate judge rejected the amendment as untimely and found a lack of good cause for the delay. The district court judge upheld the rejection, stating that "[l]ike the magistrate judge, the court has trouble following the logic of defendants' argument regarding the need to amend, and its papers on this appeal offer little enlightenment." We hold that the court did not abuse its discretion in rejecting the amendment. The request came very late in the litigation, and the subject of Peta's patent application arose much earlier at a preliminary injunction hearing, as the magistrate judge indicated at the April 4 hearing that led to the April 11 order. Moreover, the district court did not rely on the Peta patent in its summary judgment opinion, and Peta's use of its patent as evidence of noninfringement under the doctrine of equivalents is immaterial, as the court found that infringement by equivalents was barred by prosecution history estoppel.

Finally, Club Protector objects to the magistrate judge's ruling denying Club Protector's request to depose Ms. Tracy Emert. Club Protector contends that Ms. Emert had information relevant to the defenses of equitable estoppel and unclean hands, but those defenses are not a part of this case because the request to amend the pleadings was denied. Nothing in Club Protector's submissions indicates that Ms. Emert had information relevant to whether Peta's device infringed the '037 patent. The district court therefore did not abuse its discretion in upholding the magistrate judge's order on this issue.

## V

In its cross-appeal, Peta asks that we "declare this case exceptional and award attorney fees for this appeal and/or the district court case." Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." With respect to fees for the district court proceedings, we review a district court's factual finding of whether a case is exceptional for clear error. *See Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1088, 65 USPQ2d 1705, 1709 (Fed.Cir.2003); *Hoffmann–La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365, 54 USPQ2d 1846, 1850 (Fed.Cir.2000). The prevailing party must establish that the case is exceptional by clear and convincing evidence. *Hoffmann–LaRoche*, 213 F.3d at 1365, 54 USPQ2d at 1850. "The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d

1022, 1034, 61 USPQ2d 1470, 1479 (Fed. Cir.2002) (citation omitted).

Before the district court, Peta argued that Club Protector had pursued "unwarranted and spurious allegations of infringement." We do not find clear error in the district court's determination that this case is not exceptional, and thus not eligible for attorney fees for the district court proceedings. The district court stated that "[w]hile defendants' case for infringement of the '037 patent was perhaps weak, their conduct does not rise to the level of bad faith." We agree; the record does not indicate that Club Protector pursued its argument of infringement of claims 1 and 11 of the '037 without a reasonable belief in its merits. *See Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1584, 27 USPQ2d 1836, 1845 (Fed.Cir. 1993). Accordingly, we affirm the district court's denial of attorney fees.

Peta also requests attorney fees for this appeal. Peta contends that Club Protector's "incomprehensible" brief in this appeal displays "Club Protector's negligent disregard for fact and law." Among the enumerated errors Peta identifies in Club Protector's brief is the failure to provide case law to support its claim of due process violations and the attempt to "invalidate Peta's patent by claiming inequitable conduct." We have held that 35 U.S.C. § 285 "authorizes this court to award fees in cases in which the appeal itself is exceptional." *State Indus., Inc., v. Mor–Flo Indus., Inc.*, 948 F.2d 1573, 1578 n. 1, 20 USPQ2d 1738, 1741 n. 1 (Fed.Cir.1991). "Section 285 thus provides an alternative mechanism for sanctioning frivolous appeals in patent cases where ... bad faith is also shown, in addition to the more general sanctions provisions, which do not

require a showing of bad faith," including Rule 38 of the Federal Rules of Appellate Procedure.[3] *Id.* We do not find requisite evidence of bad faith in this appeal, and we therefore decline to award attorney fees under section 285.

---

**3.** Rule 38 specifies that requests for damages and costs related to a frivolous appeal must be submitted in a "separately filed motion." Peta failed to file a separate motion and did not aver to Rule 38, or frivolousness, in its brief. Thus, we decline to evaluate whether the appeal was frivolous as filed or as argued under Rule 38.